[631 NYS2d 699]

In the Matter of FRANCES BILL, Respondent, v GERALD BILL, Appellant.

Second Department, September 11, 1995

## APPEARANCES OF COUNSEL

*Kantrowitz & Goldhamer, P. C.,* Chustnut Ridge *(Paul B. Goldhamer* and *Lisa J. Miller* of counsel), for appellant.

*McGuirk, Levinson, Zeccola, Seaman, Reineke & Ornstein, P. C.,* Central Valley *(David L. Levinson* on the brief), for respondent.

## OPINION OF THE COURT

KRAUSMAN, J.

The Child Support Standards Act (hereinafter the CSSA), which became effective on September 15, 1989, was designed to "bring fairness to child support" by requiring support to be calculated based upon a fixed percentage of parental income (Governor's Approval Mem for L 1989, ch 567, 1989 NY Legis Ann, at 250). In order to ease the financial burden faced by custodial parents who work outside of the home, the statute additionally requires working parents to divide the cost of child care in proportion to their income. The primary issue presented by this appeal is whether the child support provisions of a stipulation of settlement which does not award the custodial parent child care expenses may be enforced where it neither indicates that the parents were aware of the provisions of the CSSA, nor that they were knowingly waiving them. For the reasons which follow, we conclude that the child support provisions of the parties' stipulation are unenforceable to the extent that they do not comply with the CSSA, and, consequently, that the Family Court did not err in directing the appellant father to pay a pro rata share of the mother's child care expenses.

The parties to this proceeding, Frances and Gerald Bill, were married on November 17, 1985, in Saddle River, New Jersey. The Bills have two children: 11-year-old Nicholas, born on December 7, 1983, and 8-year-old Stephanie, born on January 31, 1987. Following their marriage, the couple purchased a house in Highland Mills, New York, and moved to Orange County. Both husband and wife have been employed by the same company, BMW of North America, Inc., for a number of years.

In early 1992, the Bills separated, and the husband commenced an action seeking a divorce, *inter alia,* upon the ground of constructive abandonment. The wife counterclaimed

for a divorce, and several months later, on December 4, 1992, the matter appeared on the Orange County Supreme Court Calendar for trial. Following negotiations, on that date the parties entered into a stipulation of settlement in which they agreed that the wife would have custody of Nicholas and Stephanie, and that the husband would pay the sum of $325 per week in child support. The stipulation, which was read into the record in open court, did not contain the statutorily required statement that the parties had been advised of the provisions of the CSSA (see, Domestic Relations Law § 240 [1-b] [h]). Moreover, the stipulation failed to set forth what the husband's child support obligation would have been had it been calculated in accordance with the statutory formula, or explain why it deviated from that amount. Although the issue of whether the parties intended to share child care costs is hotly disputed on this appeal, the stipulation did not state that the parties were aware of the noncustodial parent's statutory obligation to pay a pro rata share of child care expenses, and made no provision for the division of such costs.

A judgment of divorce which incorporated the provisions of the stipulation of settlement was entered on March 26, 1993. Before entering the proposed judgment, the court, in an apparent effort to comply with the requirement that any judgment "incorporating a validly executed agreement or stipulation which deviates from the basic child support obligation * * * set forth the court's reasons for such deviation" (Domestic Relations Law § 240 [1-b] [h]), added a handwritten provision stating that "the basic [child] support obligation in this case is $28,750.00 per year, and * * * the noncustodial parent's pro rata share of the basic support obligation, as set forth herein and in the parties' December 4, 1992, settlement stipulation, is neither unjust nor inappropriate". The basis for the court's determination of the parents' yearly support obligation was a "Report of Child Support Order" form, which accompanied the proposed judgment of divorce. In this report, the husband claimed that his annual income was $65,000, and that the wife's annual income was $50,000. The $28,750 basic support figure arrived at by the Supreme Court represents 25% of the couple's total combined yearly income as set forth in the report.

Shortly after entry of the judgment of divorce, the wife commenced the instant proceeding in the Orange County Family Court to require the husband to pay a share of child care costs. The husband opposed the application, contending

that he had never consented to pay an additional sum for child care, and asserting, in support of this claim, that his $325 per week support obligation exceeded the amount of support he would have been required to pay under the CSSA guidelines. The wife countered by arguing that the husband's support obligation under the stipulation was actually approximately $30 less per week than his statutory obligation, and reflected the fact that he had additionally agreed to defray 50% of her child care expenses. The Bills' disagreement arises from the fact that the statute makes application of the fixed support formula to parental income exceeding $80,000 discretionary, but they apparently never reached an agreement as to whether the formula should be applied to that portion of their income in excess of the statutory cap.

At a hearing conducted on July 7, 1993, the wife testified that the husband had contributed up to $200 per week for child care expenses after the parties entered into their stipulation of settlement in December 1992, but that he stopped making such payments prior to the filing of her application. She also testified that it was her understanding, on the date that the parties entered into the stipulation, that the husband had agreed to pay 50% of child care expenses. In contrast, the husband testified that although the parties discussed the issue of child care on the date the stipulation was entered, they were unable to come to an agreement on this issue. Moreover, he denied that he had ever agreed to share child care costs.

After the hearing, the Family Court Hearing Examiner concluded that the husband was required to pay a pro rata share of child care expenses because the wife had not waived her right to seek reimbursement for a portion of such expenses in the stipulation of settlement, and the stipulation contained no provision addressing child care costs. The Hearing Examiner also noted that the husband had "paid child care after placing the stipulation on the record on December 2, 1992, until at least March 3, 1993". The husband subsequently filed objections to the Hearing Examiner's findings, arguing that the issue of child care expenses had been intentionally left out of the stipulation of settlement, and that "this was taken into account" in determining his child support obligation. However, on January 21, 1994, the Family Court granted the husband's objections only to the limited extent of adding a paragraph specifying that the husband would be required to pay the sum of $120 per week for child care expenses up until

August 30, 1994, and that thereafter, the husband "shall pay 60% of the child care expenses actually incurred".

On appeal, the husband maintains that the Family Court erred in directing him to share the cost of child care with the wife because their negotiated agreement intentionally omitted such a requirement. The wife asserts, however, that any deviation from the provisions of the CSSA must be fully explained by the court, and that the court's failure to explain why child care costs were not awarded in the judgment of divorce demonstrates that the court and the parties themselves overlooked this fundamental element of child support.

Our analysis of whether the support provisions of the parties' stipulation of settlement may be enforced to bar a division of child care costs must begin with a consideration of the CSSA and the policy concerns which led to its enactment. As the Court of Appeals recently observed in *Matter of Cassano v Cassano* (85 NY2d 649, 652), the CSSA was enacted to bring "greater uniformity, predictability and equity in fixing child support awards" by replacing the former needs-based discretionary system with a precisely articulated method for determining support. Under the CSSA guidelines, the court must first determine the combined income of both parents, and then multiply that income, up to a cap of $80,000, by a child support percentage which varies depending upon the number of children involved. For example, where a couple has one child, they are required to contribute 17% of their combined annual income to child support, and where a couple has two children, their support obligation consists of 25% of their income. Each parent's share of this basic support obligation is determined in accordance with his or her proportionate share of their combined income. The objective of the statute is to shift the determination of child support awards away " 'from a balancing of the expressed needs of the child and the income available to the parents' " and to a consideration of the " 'total income available to the parents and the standard of living that should be shared with the child' " *(Matter of Cassano v Cassano, supra,* at 652). In keeping with this aim, a court may, in its discretion, apply the support formula to parental income in excess of the $80,000 cap where a consideration of the parties' circumstances demonstrates "no reason why there should be a departure from the prescribed percentage" *(Matter of Cassano v Cassano, supra,* at 655).

In addition to the support obligation derived by applying the appropriate child support percentage to parental income,

clauses (4), (5), (6) and (7) of Domestic Relations Law § 240 (1-b) (c) allow the basic support obligation to be increased by directing, for example, that the parents share certain health costs, and, where appropriate, the cost of private school or college. Of particular relevance to this appeal is clause (4), which provides that where the custodial parent is working, or is receiving training or education that will lead to employment, and incurs child care expenses as a result, the court must ascertain the reasonable amount of such expenses and apportion responsibility for such expenses between the parties "in the same proportion as each parent's income is to the combined parental income". An examination of the legislative history of the CSSA reveals that child care costs were set out as "a distinct element of the basic child [care] obligation" because such costs "can represent an inordinate proportion of the costs of raising a child", and place an undue financial burden on the custodial parent (Mem of State Exec Dept, Bill Jacket, L 1989, ch 567). Moreover, supporters of the bill expressed concern that "the burden of child care costs" could be "a real disincentive to the custodial parent's seeking employment" (Mem of State Exec Dept, *ibid.).*

Although the parties to a matrimonial action are permitted to "opt out" of the requirements of the CSSA, the strong policy objectives underlying the statute require such a decision to be knowingly made, and " '[a] finding that either party was unaware of the CSSA will * * * invalidate an agreement which does not comply with its mandates [citation omitted]' " *(Gonsalves v Gonsalves,* 212 AD2d 932, 934; *Matter of Clark v Clark,* 198 AD2d 599; *Sloam v Sloam,* 185 AD2d 808). As originally enacted, the statute expressly required any agreement containing a child support provision to include a statement that the parties were aware of the CSSA *(see,* Domestic Relations Law § 240 [1-b] [h], as added by L 1989, ch 567, § 7; *see also, Matter of Sievers v Estelle,* 211 AD2d 173). Furthermore, in 1992 the Legislature "stiffen[ed the] prior law" by amending paragraph (h) of the statute to require parties to an "opt out" agreement to state that they are aware that the application of the CSSA guidelines "would 'presumptively result in the correct amount of child support to be awarded' " (Scheinkman, 1992 Supp Practice Commentary, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law C240:27, 1995 Pocket Part, at 289). Under the 1992 amendments, the parties must also set forth what the CSSA result would have been had child support been calculated in accordance with the

guidelines, and explain the reasons they agreed not to employ that result (Scheinkman, 1992 Supp Practice Commentary, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law C240:27, 1995 Pocket Part, at 290). These amendments, which "make it more difficult for parties to effectively agree to deviate from CSSA results" (Scheinkman, 1992 Supp Practice Commentary, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law C240:27, 1995 Pocket Part, at 290), are intended to "protect the interests of the children who are the intended beneficiaries of the CSSA" *(Matter of Sievers v Estelle, supra,* at 176). Proponents of the 1992 legislation further submitted that the amendments would assist review of modification applications, reasoning that if the parties agreed to a deviation from the CSSA results because of special conditions that existed at the time of the agreement, modification could be obtained upon a showing that those conditions no longer exist *(see,* Scheinkman, 1992 Supp Practice Commentary, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law C240:27, 1995 Pocket Part, at 289).

As amended effective April 2, 1992, paragraph (h) now provides: "A validly executed agreement or stipulation voluntarily entered into between the parties * * * [and] presented to the court for incorporation in an order or judgment shall include a provision stating that the parties have been advised of the provisions of this subdivision, and that the basic child support obligation provided for therein would presumptively result in the correct amount of child support to be awarded. In the event that such agreement or stipulation deviates from the basic child support obligation, the agreement or stipulation must specify the amount that such basic child support obligation would have been and the reason or reasons that such agreement or stipulation does not provide for payment of that amount."

Since Domestic Relations Law § 240 (1-b) (c) (4) and (h) are both part of the same subdivision, it is clear that the statutory intent is to ensure that a party be aware of all of the relevant provisions of the CSSA, including his or her right to receive a pro rata share of child care expenses, in order to knowingly and intelligently waive those rights. While an agreement need not expressly state that each potential supplement to the basic support obligation has been considered, compliance with the newly amended paragraph (h) demands, at minimum, that an agreement demonstrate that the parties have been fully informed of the provisions of the statute, and of how the

guidelines would operate in their individual circumstances. Compliance with paragraph (h) further mandates that the parties reach an agreement upon what their respective support obligations under CSSA would be, which can be an issue of contention where, as here, the parties' combined income exceeds the $80,000 statutory cap, making application of the statutory formula to excess income discretionary. Thus, compliance with paragraph (h) would have avoided the very situation presented at bar, where the husband claims that he agreed to pay a greater amount of support than he would have been required to pay under the guidelines because his negotiated support obligation was intended to encompass a contribution toward child care expenses, while the wife asserts that the level of support which the parties agreed upon was in reality slightly less than that which would have been required under the statutory formula.

We further note that compliance with the requirements of the 1992 amendments would have obviated the need for a hearing to determine whether the parties intended to waive their rights under the CSSA. Indeed, bearing in mind paragraph (h)'s purposes of ensuring that the provisions of the CSSA have been knowingly waived and of facilitating review of modification applications, we agree with the Appellate Division, Third Department's recent observation that "the purpose of the statutory requirements would not be served by permitting the omission [of the required information] to be cured on the basis of a hearing to determine the parties' subjective knowledge and intent" *(Matter of Sievers v Estelle, supra,* at 176).

In the case before us, the parties' stipulation of settlement wholly failed to comply with the provisions of paragraph (h), which were in effect on the date of the agreement, and at the hearing, they presented conflicting testimony regarding their subjective beliefs as to whether the stipulation intentionally excluded a provision requiring child care costs to be divided. Under these circumstances, we conclude that the parties' stipulation does not operate as an effective waiver of the wife's statutory entitlement to demand a contribution for her reasonable child care expenses. Accordingly, the Family Court did not err in directing the husband to share child care costs

with the wife, and the order appealed from is affirmed insofar as appealed from.

ROSENBLATT, J. P., RITTER and PIZZUTO, JJ., concur.

Ordered that the order is affirmed insofar as appealed from, with costs.