*128 OPINION OF THE COURT
Marianne O. Mizel, J.
On September 5, 1995, Elizabeth B. filed a petition against Emanuel K. to modify the support provisions of the parties’ judgment of divorce. The judgment of divorce incorporated but did not merge the terms of a December 18, 1990 separation agreement which provided that the parties’ children, Daniel K., date of birth October 30, 1983, and Hannah K., date of birth September 8, 1986, would spend 50% of the time with each parent. The separation agreement specifically stated that the parties had been advised of the provisions of the Child Support Standards Act (Domestic Relations Law § 240; Family Ct Act § 413 [CSSA]) in the Domestic Relations Law and the Family Court Act but that the parties opted to establish support outside the requirements of that Act. Each parent would be solely responsible for the support of the children for those periods when the children were in that parent’s physical custody. In the event the children were in the physical custody of one parent for more than 50% of the time in any 30-day period, the parent not having physical custody would pay $6 per day to the other parent for the extra days.
The parents subsequently entered into an order on consent in this court that the children’s primary residence would be with their mother and that their father would have visitation according to a schedule set forth in the order. Ms. B.’s petition to modify support cited the custody order as a change in circumstances justifying modification of the support provisions.
After several days of fact-finding conducted before Hearing Examiner Steven R. Kaufman, the parties entered into an order on consent which was signed by Hearing Examiner Kaufman on August 12, 1996. That order provided a payment schedule for $4,140 in agreed child support arrears and provided that, commencing May 17, 1996, Mr. K. would pay $130 per week in child support. The order recited "Said child support is in substantial compliance with the Child Support Standards Act, based upon the average income of the Respondent over the last few years and upon the Respondent’s financial disclosure and other evidence adduced during the aforesaid fact-finding herein. An average income basis (approach) was used to arrive at the Respondent’s income because he is a carpenter/contractor and his income from that occupation varies considerably. It is noteworthy, however, that Mr. K. also receives a fixed amount of rental income from various real *129 property he owns and manages.” An affidavit of service submitted with the order recited that a copy of the proposed order was mailed to Mr. K.’s attorney on July 26, 1996. The proposed order was noticed for settlement on August 12, 1996 and, no objections having been received, was signed by the Hearing Examiner on that date.
On October 30, 1996, Ms. B. filed a petition against Mr. K. alleging that he was in arrears $1,170, not including a payment of $1,000 on the scheduled payments for past arrears which had been due on August 15, 1996. On June 11, 1997, Mr. K.’s present attorney filed a motion to vacate the August 12, 1996 order on the basis that it did not comply with the requirements of the Child Support Standards Act in that it did not comply with Family Court Act § 413 (1) (h). Hearing Examiner Kaufman denied the motion to vacate.
As originally enacted in 1989, section 413 (1) (h) provided only that any agreement opting out of the requirements of the Child Support Standards Act must state that the parties were aware of the existence of the Child Support Standards Act but had elected, for reasons specified in the agreement, to deviate from the CSSA provisions. The Child Support Standards Act effected a substantial change from the prior methods of calculating child support and the inclusion of such a provision effected a public-educational purpose. Case law is replete with examples of child support agreements which did not recite the parties’ awareness of the existence of the Child Support Standards Act. In such cases, the matter was frequently remanded for a hearing on whether the parties were actually aware of the existence of the Child Support Standards Act at the time they entered into a child support agreement (see, e.g., Maser v Maser, 226 AD2d 684 [2d Dept 1996]; Gonsalves v Gonsalves, 212 AD2d 932 [3d Dept 1995]; Matter of Clark v Clark, 198 AD2d 599 [3d Dept 1993]; Sloam v Sloam, 185 AD2d 808 [2d Dept 1992]). The appellate decisions clearly demonstrate that the important factor to be determined on remand was whether the failure to include the required recitation was a defect of form or a defect of substance: whether the parties actually knew that the new law had been enacted but had failed to include the recitation required by the law or whether the parties did not know that a new law substantially changing the way child support would be calculated had been enacted. The clear implication (and direct statements in some cases) was that, if the parties had in fact known of the Child Support Standards Act at the time the agreement under scrutiny had *130 been entered into but had failed to reflect that actual knowledge in the agreement, the child support terms of the agreement would continue.
As amended in April 1992, section 413 (1) (h) requires that all agreements establishing child support state what the dollar amount of support would be under the Child Support Standards Act, state that this amount would be the presumptively correct amount, and then state why the parties choose to deviate from that amount. The earliest cases interpreting this section vacate the agreement for failure to state the presumptively correct CSSA amount and remand the matter for a determination of the support amount de novo. (See, e.g., Riggie v Riggie, 217 AD2d 909 [4th Dept 1995]; Matter of Sievers v Estelle, 211 AD2d 173, 176 [3d Dept 1995]; Matter of Burnside v Somerville, 202 AD2d 1064 [4th Dept 1994].) A recently decided case, Appel v Appel (241 AD2d 470,1997 NY Slip Op 06743 [2d Dept, July 14, 1997]), concerned a stipulation entered into immediately after amendment of the statute. The matter was remitted on issues of custody and child support, including whether the mother was aware of the Child Support Standards Act at the time she entered into a stipulation subsequently incorporated into the parties’ July 10, 1992 judgment of divorce.
A hybrid of the "remand for hearing on knowledge” under the original enactment of section 413 (1) (h) and the later "reverse and remand for hearing de novo” of the first cases under the amended section 413 (1) (h) occurred in Matter of Bill v Bill (214 AD2d 84 [2d Dept 1995]). That case concerned whether the amount of support agreed upon included the add-on for child care. The Appellate Division held that the stipulation did not bar the custodial parent from seeking a contribution to child care expenses and Family Court’s direction to the husband to pay an additional amount for child care expenses was not an abuse of discretion. The Family Court decision directing such payment was affirmed. In contrast, the Appellate Division, First Department, in Vernon v Vernon (239 AD2d 108 [1st Dept 1997]), decided that the child care and medical cost add-ons are separate components and are required to be separately, specifically stated as to what amount would have been awarded under the CSSA together with the reasons for deviating from those presumptively correct amounts before the parties can validly enter into a stipulation deviating from the CSSA. Failure to state the CSSA amounts of medical care costs and child care costs does not, however, invalidate the rest of the stipulation provisions regarding child support if they *131 comply with the requirements of Domestic Relations Law § 240 (1-b) (h).
Another group of cases has been created in which the appellate court has concluded that, if there is insufficient information in the record to determine child support in accordance with the CSSA, support shall be established on the needs or standard of living of the child under Family Court Act § 413 (1) (k) or its corollary, Domestic Relations Law § 240 (1-b) (k). If the court can determine the needs of the children or the standard of living, the court will decide support on that basis rather than remand for additional information to create a sufficient basis for an award of child support under the CSSA, even where such additional information may be readily obtained. (See, e.g., Orlando v Orlando, 222 AD2d 906, 908 [3d Dept 1995] ["The Child Support Standards Act provides that when there is insufficient evidence to determine gross income, 'the court shall order child support based upon the needs or standard of living of the child, whichever is greater’ * * * Based upon our review of the record, we conclude that the child support award of $200 per week reflects the standard of living of the children and, therefore, will not be disturbed. To the extent that our analysis of the child support issue differs from that of Supreme Court and contains additional findings of fact, we have exercised our authority to review the facts to make the necessary findings”]; Phillip v Phillip, 221 AD2d 189 [1st Dept 1995] ["Based upon defendant’s failure to disclose required financial information (22 NYCRR 202.16 [k] [5]), we infer that his income is at least $45,000, in which event the award of temporary child support * * * was well within the Uniform Child Support Guidelines set forth in Domestic Relations Law § 240 (1-b) (citations omitted)”]; Fanelli v Fanelli, 215 AD2d 718, 721 [2d Dept 1995] ["Although the court should have considered the Social Security and New York City taxes actually paid by the parties and deducted the same from each party’s income to determine the combined parental income * * * a review of the record shows that the evidence before the court was inadequate to determine the amounts for such taxes paid by the parties.” "Thus, the court’s determination of the child support award was proper based on the available financial proof in the record (compare, Manno v Manno, 196 AD2d 488)”]; Rocchio v Rocchio, 213 AD2d 535 [2d Dept 1995] [because the father refused to provide financial disclosure, he cannot contend that Supreme Court lacked a factual basis for upward modification (22 NYCRR 202.16 [k] [4], [5]; Domestic Relations Law § 240 [1-b] [k])].) In *132 Matter of Congdon v Congdon (200 AD2d 836 [3d Dept 1994]), neither party presented evidence of income, expenses, standard of living or the needs of the parties and the children. Family Court was unable to make a determination of support under the CSSA, or determine the standard of living of the children, or determine the needs of the children as allowed in Family Court Act § 413 (1) (k). The petition was, therefore, properly dismissed. Because the court could not reach the merits under any basis, the dismissal was without prejudice to the filing of a new petition.
The order dated August 12, 1996 does not contain the dollar amount required by section 413 (1) (h). The question before this court on this objection is whether the failure to recite the dollar amount renders the order on consent void ab initio. This court concludes that this failure does not render the order void because this case is not governed by section 413 (1) (h) but rather by section 413 (1) (k) as a case in which the financial information presented was so confused as to make determination of an order in accordance with the CSSA very difficult. In such a situation, the parties were able to enter into an agreement based on the needs of the child.
The requirements of Family Court Act § 413 (1) (h) presumes that the parties agree on what the presumptively correct amount of support under the Child Support Standards Act would be. As Alan D. Scheinkman’s 1992 Supplementary Practice Commentaries to the parallel provisions of Domestic Relations Law § 240 (1-b) (h) state:
"The statute makes no provision for what action to take where the parties, though in agreement as to what child support should be paid, cannot agree as to what the CSSA result would have been * * *
"Clearly, it is preferable for the parties to try to work out their differences and agree upon what the CSSA result would have been. But if the parties cannot agree as to what the CSSA calculations would yield, one approach would be to adopt the court’s view of those calculations, as set forth in a temporary support order or as indicated at a conference. Another approach would be to set forth each party’s statement of what CSSA would have yielded. Indeed, disagreement between the parties as to what CSSA would yield would seem, by itself, ample justification for a compromise on child support which would deviate from both parties’ calculations.” (Scheinkman, 1992 Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law C240:27, 1997-1998 Supp Pamph, at 434-435.)
*133 From the transcript, it is apparent that the parties were aware of the existence of the CSSA and equally apparent that there was no agreement between the parties as to what the child support order would have been if calculated pursuant to the Child Support Standards Act. The $130 per week was not just the percentage child support amount, calculated under Family Court Act § 413 (1) (c) (1) and (2), but also included any amounts which would have been awarded as add-ons under section 413 (1) (c) (3), (4), (5), or (6) and also included any payments for health insurance premiums, which the Hearing Examiner would have had the discretion to award under section 416. The agreement that Mr. K. pay $130 per week was not an agreement that Mr. K. earned $29,280 a year ($130 52 = $6,760; $6,760 .25 = $27,040; $27,040 0.9235 = $29,280). The amounts directed to be paid as add-ons or as contribution to health insurance premiums can significantly increase the total amount of child support to be paid well beyond that portion calculated as a percentage of adjusted annual income.
The transcript states that part of the reason why the parties elected to settle their dispute at $130 per week is the difficulty of ascertaining Mr. K.’s actual income. Mr. K. is not a W-2 wage earner but rather receives income from self-employment and from rental properties. The testimony and financial records received up to the point of settlement presented a very confused financial picture. Also, questions were raised about the continuing applicability of the provision in the December 18, 1990 separation agreement providing for $6 per day support.
Unfortunately, the file of evidence from the 1996 fact-finding dates is incomplete. Mr. K.’s financial affidavit from that hearing is not in the file although the March 22, 1996 audiotape indicates that it was admitted into evidence and the attorneys utilized it frequently in questioning Mr. K. The audiotape also indicates that Mr. K. had not yet prepared and filed his 1995 income tax return for the March 22, 1996 fact-finding date. At the April 12, 1996 continued fact-finding, Mr. K. was directed to have the 1995 return prepared and sent to counsel and the court on or before May 1, 1996, irrespective of any extensions he may receive from the Federal Government. His financial affidavit sworn to in 1997 is in the evidence file from a later hearing but it is not sufficient for this court’s purposes on review. Likewise, Mr. K.’s 1995 income tax return is not in the evidence file. Without these pieces of information, it is impos *134 sible for this court to review the financial information presented at that hearing and attempt to further clarify the evidence.
Among the exhibits which are contained in the evidence file are Mr. K.’s bank statements for 1995. They show deposits of $87,072 for the period from December 14, 1994 to December 13, 1995. Mr. K. testified that these deposits were from $39,000 gross rent receipts, $10,000 contracting income, $14,000 loan proceeds from refinancing real property, $3,000 to $5,000 reimbursement of medical expense payments he had advanced for his older son, Marco, from a previous relationship, and $22,000 to $26,000 in cash advances from credit cards (he produced nine credit card statements from four credit cards documenting $12,900 in cash advances). Testimony on the audiotape indicates that Mr. K.’s 1996 financial disclosure affidavit, acknowledged November 17, 1995, shows credit card debts only to two credit cards. Mr. K. testified that he used the loan proceeds from the refinancing to pay off the other credit cards. Additionally, there was testimony that Mr. K. had stated on the loan application that he earned $2,000 per month and additional testimony that he had represented his income to this court to be on average $400 per week, varying in any one week due to availability of work, for purposes of establishing his rate of payment for mental health evaluations in the custody proceedings. On the second day of fact-finding, Mr. K. stated that many of his financial records were not with him in court but that he could supply various financial documentation, including the records of credit card advances, which had initially been explored at the first day of fact-finding. Ms. B.’s attorney then requested the balance of the credit card records be provided on the date scheduled for continuation of the fact-finding to show the additional credit card advances beyond the $12,900 Mr. K. was then able to produce. Mr. K. began testimony at the end of the second day of fact-finding that he had been unable to work in 1996 due to pain in his right arm. Mr. K. introduced checks showing monthly payments of $631 to his son Marco. No testimony was presented as to Marco’s age (although he was apparently old enough to own and drive a truck), the total amount owed to Marco, the purpose of the loan from Marco, and why Mr. K. could continue paying Marco $613 per month but had not paid anything for the support of his minor children since the time Ms. B. filed the petition to modify support. Mr. K. unabashedly testified that he stopped making child support payments because Ms. B. had filed to modify.
*135 Under Kutovsky v Kutovsky (NYLJ, Apr. 26, 1991, at 25, col 4 [Sup Ct, Kings County]), where a party has obscured his finances, the court should make an order of child support under Domestic Relations Law § 240 (1-b) (k) based on the child’s needs and standard of living. Ms. B. had submitted a financial affidavit showing her household expenses. It recited $1,218 a month total in housing. In expenses identified to the children, the financial affidavit shows $350 per month in food for the two children, $180 a month in clothing, $20 in laundry, $66 in medical expenses and $193 in recreational activities and therapy. The children’s specific expenses total $809 per month. Their proportionate share of the housing expense is $305 (25% of $1,218). These two expenses total $1,114. Mr. K.’s obligation for support under the stipulation was $130 per week or $559 per month, just slightly less than half their expenses. This was a reasonable amount for Mr. K. to pay for their support and, in light of the difficulty in ascertaining his true income, just and appropriate under the circumstances. Mr. K. testified that he had paid one half of the child care and other expenses concerning the children as those bills were presented to him by Ms. B.
The decision and order on motion of the Hearing Examiner dated July 2, 1997 clearly states that the stipulation was arrived at by considering the needs of the children in a desire to settle the matter at a point before the court was able to determine what the CSSA amount would have been. Although a court could not approve every agreement in a situation where insufficient evidence had been presented to determine what the presumptively correct CSSA order would have been, the Hearing Examiner has the discretion to approve an order which will adequately provide for the needs of the children. An order of $130 per week should adequately provide for the needs of two healthy children in Ulster County. No special circumstances had been shown to the Hearing Examiner which would indicate that $130 would be too little for Daniel and Hannah. Caution must be exercised so that "need determination” does not swallow up "income determination” as mandated by the CSSA in the more difficult cases. The Hearing Examiner must have the discretion to deviate from the CSSA for good cause shown. Where continuation of a fact-finding hearing may deepen confusion rather than develop clarification, the interests of a speedy resolution at an amount which the parties agree to and which is adequate to meet children’s needs should be given significant weight.
*136 The court finds that the Hearing Examiner did not abuse his discretion in approving the stipulation entered into by the parties. Family Court Act § 413 (1) (h) states that enactment of the CSSA did not take away the parties’ rights to establish support by contract provided such contract is made with full knowledge of the provisions and applications of the CSSA. Such contract is subject to approval by the Hearing Examiner as in the best interests of the children. It is unrealistic to expect that parties can always agree as to what the outcome of a fact-finding will be in advance of the fact-finding and ultimate decision by the Hearing Examiner. To require every contested support matter to be tried to conclusion and a decision rendered by the Hearing Examiner before the parties can validly contract differently is an unrealistic expectation. The resolution achieved by the stipulation is a realistic balancing of the interests of the parents to end litigation and the interests of the children in receiving adequate support.
As a decision under Family Court Act § 413 (1) (k), the order of support is always subject to modification upon receipt of sufficient financial information to make a determination within the requirements of the CSSA. Mr. K. has brought a modification petition which is in the process of being tried. If he presents sufficient information on that fact-finding for the Hearing Examiner to make an accurate determination of his income, then the August 1996 order can be modified downward as of the date of the filing of the modification petition or amended upward effective the date Ms. B. filed her petition to modify the judgment of divorce.